UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID VAN ELZEN, individually and on
behalf of all others similarly situated,

        Plaintiff,

      v.                                        Case No. 22-C-859

ADVISORS IGNITE USA LLC,

        Defendant.

---

**DECISION AND ORDER DENYING MOTION FOR CLASS CERTIFICATION**

---

      This putative class action alleges violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and seeks monetary damages and declaratory and injunctive relief for Plaintiff David Van Elzen on behalf of himself and all other persons similarly situated against Defendant Advisors Ignite USA, LLC, and its owner and CEO Steven DeJohn. The TCPA, as relevant here, prohibits any person, without prior express consent, from making a telephone call, using a prerecorded voice, to a telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). The Act provides for statutory damages of $500 per violation, which can be trebled if the violation is found to be willful or knowing. § 227(b)(3)(B) and (C).

      Van Elzen alleges that Advisors Ignite and DeJohn caused prerecorded calls to be made to consumers' cellular telephone numbers without their consent in violation of the TCPA. The court has jurisdiction pursuant to 28 U.S.C. § 1331. The case is currently before the court on Van Elzen's motion for class certification. He proposes to represent a class of "[a]ll persons in the United States who (1) were called one or more times by Advisors Ignite (2) from March 17, 2022 to June 30, 2022 (3) with a ringless voicemail from SlyBroadcast (4) on their cellular telephone

number with an area code starting with a 7, 8, or 9 that had not been ported in the 15 days prior to either call." Pl.'s Br. in Supp. at 5, Dkt. No. 32. The term "ported," when used in this context, means that the number was not transferred from one phone service provider to another service provider. After the motion was fully briefed, the parties stipulated to the dismissal of DeJohn. For the following reasons, Van Elzen's motion for class certification of the claim against Advisors Ignite will be denied.

## BACKGROUND

The representative plaintiff, David Van Elzen, is an insurance agent residing in Menasha, Wisconsin. Am. Compl. ¶ 1, Dkt. No. 20. Advisors Ignite USA is a marketing company located in Downers Grove, Illinois, that works with independent insurance agents and financial advisors who, in turn, work with independent marketing organizations to sell annuities to major insurance carriers in the United States. Advisors Ignite is a small business with only six employees.

In an effort to grow its business, Advisors Ignite decided to utilize ringless voicemail technology to offer marketing events, such as live insurance seminars, to get its name in front of prospective business agents. Advisors Ignite's Chief Marketing Officer had received several ringless voicemails on his cell phone and thought it worth pursuing. Advisors Ignite contacted SlyBroadcast, a company that claims on its website to serve over "3 million people who send voicemails using [SlyBroadcast's] patented ringless voicemail technology." Dkt. No. 35-4 at 2. After reviewing the SlyBroadcast website, Advisors Ignite contracted with SlyBroadcast to begin a marketing campaign using ringless voicemails.

Advisors Ignite purchased a list of insurance agents from Accupoint Solutions, an industry data provider that offers extensive information on insurance agents, financial advisors and firms that distribute insurance products and services. Advisors Ignite also purchased lists of names and

2

contact information of insurance agents from another company called Data Discovery. The lists purchased by Advisors Ignite were delivered to SlyBroadcast, which then conducted the campaign to send ringless voicemails, recorded by DeJohn, to the insurance agents whose telephone numbers appeared on the lists. Van Elzen claims to have received one of the prerecorded ringless voicemails sent on Advisors Ignite's behalf. As a result of this lawsuit, Advisors Ignite has ceased sending prerecorded ringless voicemail messages to insurance agents on its purchased lists.

## LEGAL STANDARD

"Because a class action is an exception to the usual rule that only a named party before the court can have her claims adjudicated, the class representative must be part of the class and possess the same interest and suffer the same injury." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). A plaintiff requesting class certification must satisfy the four prerequisites of Rule 23(a) as well as one of three alternative provisions listed in Rule 23(b). *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Rule 23(a) requires that a plaintiff establish that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to satisfying the requirements of Rule 23(a), "a class action may be maintained if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It is the plaintiff's burden to prove that class certification is warranted. *Oshana*, 472 F.3d at 513.

3

Rule 23 is not a "mere pleading standard," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), and a plaintiff must prove each disputed requirement by a preponderance of the evidence. *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)). "A court must look beyond pleadings in order to properly understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful decision on class certification." *Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021).

"A class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). This is because "[c]ertification as a class action can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit." *Id.* (citing 1998 Advisory Committee Notes to Fed. R. Civ. P. 23(f) ("an order granting certification . . . may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability")). This is especially true in cases brought under statutes such as the TCPA, which "makes violators strictly liable for cumulatively very heavy statutory penalties." *Id.* In this case, for example, Van Elzen contends that Advisors Ignite transmitted more than 15,000 prerecorded ringless voicemail messages, which would result in a minimum of more than $7.5 million dollars in statutory damages. If trebled, the amount would exceed $22.5 million. Judgment for either amount could readily bankrupt a small business such as Advisors Ignite.

4

## ANALYSIS

### A. Numerosity

The proposed class consists of thousands of members. Pl.'s Br. in Supp. at 3. Advisors Ignite does not dispute the size of the proposed class. While there is no bright-line rule for numerosity, there is little question that a class of more than 14,000 is sufficiently numerous under Rule 23(a)(1). *See Pruitt v. City of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006) ("Sometimes even 40 plaintiffs would be unmanageable."). Moreover, there are factors other than class size to consider under Rule 23(a)(1): "judicial economy arising from the avoidance of a multiplicity of actions, the ease of identification of members of the proposed class, the geographic dispersion of class members, the size of each plaintiff's claim, the financial resources of the class members, [and] the ability of claimants to institute individual suits." *Young v. Fortis Plastics, LLC*, 294 F.R.D. 128, 134 (N.D. Ind. 2013) (citing Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3:6 (2002 & Supp. 2011)). Here, Van Elzen has proposed a way to identify members of the proposed class and has limited their geographic dispersion by including only telephone numbers of certain area codes, and judicial economy would be served to avoid a multiplicity of actions. Advisors Ignite does not contend that class certification should be denied on the basis of numerosity. Thus, Van Elzen has met the numerosity requirement of Rule 23(a).

### B. Commonality and Predominance

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citation omitted). In addressing the requirement of commonality, the court must identify all of the key issues in an action, arising from a plaintiff's claims as well as a defendant's affirmative defenses, to eventually determine whether individual issues or common issues predominate. *See Simer v.*

5

*Rios*, 661 F.2d 655, 672 (7th Cir. 1981); *see also Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 845 (7th Cir. 2022). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member; a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Gorss Motels*, 29 F.4th at 843–44.

Van Elzen asserts a single claim under the TCPA, which generally makes it unlawful to make calls "using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). Advisors Ignite asserts that the alleged phone calls are exempt from TCPA liability because they were "made with the prior express written consent of the called party." Affirmative Defenses ¶ 13, Dkt. No. 26 (citing 47 C.F.R. § 64.1200(a)(2)). Further, Advisors Ignite contends that Van Elzen's and the proposed class members' claim is barred for lack of standing because they have not suffered an injury in fact. *Id.* ¶¶ 11–12. Thus, for predominance purposes, the key issues are whether Advisors Ignite had the callers' consent to make the alleged calls and whether the receipt of a prerecorded call establishes standing. The court determines whether the resolution of those issues is susceptible to class-wide proof.

Whether the issue of express consent under the TCPA is a common or individual question depends on the facts of a particular case, such as the degree of "variation in the form employed for obtaining permission." *Gorss Motels*, 29 F.4th at 844. For instance, in the context of unsolicited fax advertisements, which are similarly proscribed by the TCPA, "where the fax sender purchased a contact list from a third-party vendor and made no attempt to seek permission from any of the recipients before sending the fax advertisement, there is a generalized, class-wide manner of

proving lack of consent." *Id.* When the "question of what suffices for consent" or the manner in which consent is given "is likely to vary from recipient to recipient," the court must make "transaction-specific inquiries [that are] the 'hallmarks' of an issue that require[s] individual scrutiny." *Id.* (quoting *Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285, 291 (7th Cir. 2018)).

Advisors Ignite claims that there are numerous ways consent could have been established between it and the alleged call recipients. Def.'s Br. in Opp. at 10, Dkt. No. 35. As evidence, Advisors Ignite offers the fact that its website allows for users to provide consent to be contacted and that, particularly, in a previous case where Van Elzen asserted a similar claim against another defendant, there was enough evidence to support a finding that Van Elzen had agreed to being contacted in that case. *Id.* at 10–11. This, the argument goes, tends to show that Van Elzen has a history of providing online consent to receive telephonic business solicitations. *Id.* at 12. Even if Van Elzen has a history of providing online consent, and other class members had the option to provide consent online, Advisors Ignite has not presented any evidence that Van Elzen, or any class member, provided consent to prerecorded voicemail messages in this case. A history of providing consent to other kinds of messages in other cases does not suggest that the consent defense is not susceptible to class-wide proof here.

The TCPA requires that "a call using a prerecorded voice for telemarketing, must be made with the prior express written consent of the called party and the consent must state the name of the seller of the product to be telemarked." *Moore v. Club Exploria, LLC*, 19 C 2504, 2023 WL 5289337, at *4 (N.D. Ill. Aug. 17, 2023) (citing 27 F.C.C. Rcd. 1830, 1838 (2012)). This is a clear and unambiguous requirement. Advisors Ignite offers no evidence that either it or the companies from which it purchased its lists of insurance agents obtained such consent. Advisors Ignite contends, for example, that it maintains a website where users provide consent to be contacted by

7

submitting their contact information. Def.'s Br. in Opp. at 10. But it offers no evidence that users who provide their contact information provide the express consent required by the TCPA to receive prerecorded voice messages. Unlike the Junk Fax Act amendment to the TCPA, the prohibition of prerecorded voice messages without prior written consent does not have exceptions for situations where the sender has an "established business relationship" with the recipient. *See Brodsky*, 910 F.3d at 290. For this reason, Advisors Ignite's reliance on cases such as *Brodsky*, *CE Design*, and *Gorss Motels*, each of which involved consent to receive fax solicitations, is misplaced.

The availability of other ways in which class members could have given consent does not suggest that this particular defense presents an individual question when Advisors Ignite has not suggested that there was in fact any variation in the manner in which Advisors Ignite obtained consent from different call recipients. *See Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018) ("While it is plaintiff's burden to meet the predominance test, opposition to predominance based on theory, not evidence, is not a weighty objection." (citations omitted)). Similarly, Advisors Ignite purchased contact lists from third-party vendors, namely AccuPoint Data Solutions and Discovery Data. Dressander Dep. at 12:13–22, Dkt. No. 35-3. Possibly from other vendors as well. *Id.* But the fact that Advisors Ignite obtained its contacts from several sources does not suggest that consent was provided in different ways. To the contrary, the undisputed evidence suggests that neither Advisors Ignite, nor the vendors from whom it obtained the lists, ever sought consent to send ringless voicemail messages, presumably because they did not know consent was required under the TCPA. The court is therefore satisfied that there is a generalized, class-wide manner of proving lack of consent.

Advisors Ignite also questions whether the issue of standing is common to each member of the proposed class. The "'irreducible constitutional minimum' of standing consists of three elements. . . . The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* Advisors Ignite contends that Van Elzen has "not shown that Plaintiff suffered an injury in fact that would be cognizable under Article III." Def.'s Br. in Opp. at 10. But in his amended complaint Van Elzen alleged "the unauthorized prerecorded call that Plaintiff received from Defendants has harmed Plaintiff Van Elzen in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery), the consumption of memory on the phone." Am. Compl. ¶ 30. This is enough to support a finding that Van Elzen has standing to bring this action under Article III of the Constitution. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes.").

But the question is not simply whether Van Elzen was harmed; in order for Van Elzen's motion for certification of a class under Rule 23 to be granted, he must show that the members of the class he seeks to certify were similarly harmed. *See Barrows v. Becerra*, 24 F.4th 116, 128 (2d Cir. 2022) ("'We do not require that each member of a class submit evidence of personal standing,' but 'no class may be certified that contains members lacking Article III standing.'" (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006))); *see also Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) ("The second deficiency in the class action claims is

9

that since the proposed class is so amorphous and diverse, it cannot be reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief. If the conceived injury is abstract, conjectural or hypothetical as here, instead of real, immediate or direct, the complaint fails to cite an actual case or controversy under Article III of the Constitution." (citing *O'Shea v. Littleton*, 414 U.S. 488, 493–94 (1974)).

Van Elzen assumes that every insurance agent who received just one ringless voicemail from Advisors Ignite suffered the same harm he claims to have sustained as a result of receiving a message offering a way to substantially increase his income. That seems doubtful. Advisors Ignite did not contract with SlyBroadcast because it wanted to harass or annoy potential customers. It no doubt thought that some number of insurance agents that received its message would be interested in learning of the services it offered that could significantly increase their income. And presumably some of the recipients of the messages it sent were happy to receive them. They may have even followed up by calling Advisors Ignite. Some may in fact have benefitted from receiving the information Advisors Ignite provided. Even those that did not call may have felt unharmed by learning of what was offered and were not annoyed or harmed. They may well have found the information worth the little effort it takes to delete a message after it is received.

The mere fact that Advisors Ignite may have violated the TCPA in placing the messages does not mean that everyone who received one was harmed. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotations omitted). For an injury to be concrete, it must be "'*de facto*'; that is, it must actually

exist." *Id.* at 340. A plaintiff does not satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. "Every class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring).

These considerations lead the court to conclude that at least as to the issue of standing, common issues of fact do not predominate. "If many or most of the putative class members could not show that they suffered an injury fairly traceable to the defendant's misconduct, then they would not be able to recover, and that is assuredly a relevant factor that a district court must consider when deciding whether and how to certify a class." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019). "In this case, unnamed class members' standing poses a powerful problem under Rule 23(b)(3)'s predominance factor." *Id.* "This problem will necessarily arise here because at some point before it can award any relief, the district court will have to determine whether each member of the class has standing." *Id.* at 1274. That is an individualized issue, and it is one that Van Elzen has not accounted for or considered in arguing that common issues predominate over individualized issues. He has simply assumed that every recipient of a single voicemail from Advisors Ignite suffered the same harm he did. The assumption might be reasonable if the same message was sent over and over to random individuals with no connection to the insurance business. But this was essentially a one-time message targeted to individuals most likely to have some interest in the information conveyed. "[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the

11

defendant, . . . if only because of the *in terrorem* character of a class action." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677–78 (7th Cir. 2009) (internal citations omitted). For this reason alone, Van Elzen's motion for class certification will be denied.

### C. Typicality

The typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *McFields v. Dart*, 982 F.3d 511, 518 (7th Cir. 2020) (internal citation omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel.*, 457 U.S. at 157–58, n.13. For the same reason that the case fails to meet the commonality requirement, it also fails the typicality requirement of Rule 23(a). The question of whether each member of the proposed class suffered an injury in fact is so particularized as to make resolving it on a class wide basis difficult, if not impossible. For this reason, as well, Van Elzen's motion will be denied.

### D. Adequacy

Advisors Ignite argues that Van Elzen is not an adequate class representative because he allegedly acted in bad faith, engaging in deceitful tactics to elicit calls falling under the purview of the TCPA, to later file TCPA lawsuits based on those calls. Affirmative Defenses ¶¶ 15–16; Def.'s Br. in Opp. at 16. Moreover, Advisors Ignite argues that, besides Van Elzen's history of providing online consent to similar defendants in prior cases, he has not presented any evidence that Advisors Ignite acquired his contact information through any of the contact lists that Advisors

12

Ignite purchased from third-party vendors. Def.'s Br. in Opp. at 12, 19. A plaintiff "cannot be an adequate representative of the class of unconsenting recipients of [prerecorded phone calls] if it is subject to a defense that couldn't be sustained against other class members." *CE Design*, 637 F.3d at 725. This is the case, "however meritorious the suit itself may be." *Id.* at 726. For that reason, a "plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *Id.*

Advisors Ignite contends that Van Elzen's history of filing TCPA lawsuits is evidence of potential bad faith. It notes that this lawsuit constitutes Van Elzen's twelfth TCPA action against different defendants over the last ten years. Pl.'s Resp. to Def.'s First set of Interrogs. at 6, Dkt. No. 35-1. But this does not mean that Van Elzen is dishonest or could not be an adequate class representative. "[I]t's not unlawful to be a professional class action plaintiff." *CE Design*, 637 F.3d at 724. "Indeed, an experienced plaintiff in such an action may be able to ensure that class counsel act as faithful agents of the class." *Id.* Moreover, the Seventh Circuit has cautioned against "extending an invitation to defendants to try to derail legitimate class actions by conjuring up trivial credibility problems or insubstantial defenses unique to the class representative." *Id.* at 728. "Serious challenges to typicality and adequacy," the court explained, "must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class." *Id.* "For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *Id.* Advisors Ignite has offered no such evidence here. Its argument that Van Elzen fails as an adequate class representative therefore fails.

13

E.  **Superiority**

Before certifying a class action, a court must take a "close look" at whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). For the reasons set forth above, the court is satisfied that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy. Van Elzen's motion will therefore be denied.

## CONCLUSION

For these reasons, Van Elzen has not met his burden to show that class certification is appropriate under Federal Rule of Civil Procedure 23, and the motion for class certification (Dkt. No. 31) is **DENIED**.

**SO ORDERED** at Green Bay, Wisconsin this 18th day of January, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
